IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| CLAY CURTIS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. CIV-13-986-R |
|  | ) |  |
| CROP PRODUCTION SERVICES, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

# ORDER

This matter comes before the Court on a series of motions, triggered by the filing of Plaintiff's Motion for Leave to Allow Kent Martin, Ph.D., to Submit a Supplemental Expert Report (Doc. No. 67). In response thereto Defendant filed a series of motions: Defendant's Motion to Extend the Discovery Deadline for Expert Depositions (Doc. No. 72); Defendant's Motion to Quash the Subpoenas of John Boyd and A.L. Hutson (Doc. No. 76); Defendant's Motion for Protective Order (Doc. No. 77); and Defendant's Cross-Motion to Strike the Supplemental Report and Exclude the Related Testimony of Kent Martin, Ph.D. (Doc. No. 85). The Court ordered expedited briefing on the motions, save for Defendant's Cross-Motion to Strike, which is the inverse of Plaintiff's triggering motion, and therefore, the Court concludes no response to that motion is necessary before the Court considers the substance of the motion.[1] The parties have filed responses and replies in accordance with the

---

[1] In addition, on August 21, 2014, Defendant filed two motions to expedite (Doc. 88 and 89), seeking rulings on the motion to quash and motion for protective order not later than August 25, 2014. Although it seems apparent that the Court was aware of the expeditious nature of the motions, having *sua sponte* shortened the response times thereto, in the future it will behoove Defendant to seek to shorten response times
(continued...)

Court's expedited schedule, and the Court hereby finds as follows.

**Plaintiff's Motion to Supplement (Doc. No. 67)**

First, to the extent this report is an appropriate supplement, to be addressed herein, Dr. Martin's supplement is timely. The Court's Scheduling Order provided no deadline for the supplementation of expert reports, as required by Rule 26(e)(2), and therefore, pursuant to that same rule, the timeliness of disclosure is governed by Rule 26(a)(3), which sets the deadline as thirty days prior to trial. Therefore, the operative issue is whether the second report is truly a supplement as contemplated by the rules and case law.

"[S]upplementation may only be based upon additional or corrective information that was unavailable when the expert made his or her initial report*." Bruner–McMahon v. Sedgwick Cnty. Bd. of Comm'rs*, No. 10–1064–KHV, 2012 WL 33837, at *2 n. 16 (D.Kan. Jan. 6, 2012). "A supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)." *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, No. 05–1721–KHV, 2008 WL 4937651, at *2 (D.Kan. Nov. 17, 2008). A lack of diligence in pursuing information potentially available at the time of the original report does not render the information unavailable. *Spirit Aerosystems, Inc. v. SPS Techs.*, LLC, No. 09–CV–1144–EFM–KGG, 2013 WL 6196314, at *6 (D.Kan. Nov. 27, 2013). Courts have made clear "that Rule 26(e)(2) does not permit

---

[1](...continued)
and to request an expeditious ruling at the time it files the motions.

a party to use the supplementing procedure to submit an amended or rebuttal report not based on new information." *Sibley v. Sprint Nextel Corp.*, 2013 WL 1819773 (D.Kan. April 30, 2013).

Plaintiff contends his supplement is appropriate under Rule 26, because additional evidence upon which Kent Martin, Ph.D. bases his more thorough opinions was allegedly not available at the time the original report was prepared.[2] The lack of availability of that evidence, however, appears to be the result of counsel's failure to properly plan discovery such that the requisite information would be available to Dr. Martin in a timely manner, permitting him to prepare a thorough report to be disclosed by July 1, 2014. Plaintiff did not issue its subpoena to BASF, manufacturer of the chemicals he contends were improperly applied to his alfalfa fields until June 1, 2014, with compliance not required until June 17, 2014. The parties apparently did not anticipate the need for a protective order, further delaying BASF's response to the subpoena.[3] Plaintiff also asserts that counsel diligently sought records regarding soil temperature, but did not receive same until August 5, 2014.[4]

---

[2] The original report indicates:
I have reviewed the information in Case No.: CIV-13-986-R as thoroughly as possible given the allotted time. Please note that with additional time, additional pertinent information may become evident.
Doc. 45, Exhibit 1.

[3] Plaintiff indicates that Defendant bears a portion of the blame for the delay in seeking the protective order. That delay of three to four days, however, does not account for the more than one month delay between the protective order and disclosure of the supplemental report to Defendant. Furthermore, as the party seeking discovery from the non-party manufacturer, the Court places the burden of anticipating the need to protect the manufacturer's confidential information on Plaintiff.

[4] Counsel does not detail what steps were taken in the diligent search for such records. Defendant provides information that Plaintiff's counsel did not request the records until August 4, 2014, well beyond
(continued...)

As such, it appears to the Court that Plaintiff, who advocated for and received a scheduling order establishing an October 2014 trial date, with a corresponding July 1, 2014 deadline for expert disclosures, now wishes to have that deadline essentially extended in his favor. The Court finds his arguments unavailing with regard to the majority of Dr. Martin's report, however, as it appears that the inability to produce the a thorough expert report was largely based on a lack of diligence.[5] Additionally, with regard to certain of the information in the supplemental report, the expert expands substantially on the opinions rendered in his initial report, in such a manner that the Court concludes with regard to certain portions of the supplement that it would be improper to permit those opinions, as it would prejudice Defendant at this late date.[6]

In his July 1, 2014 report, Dr. Martin's opinion regarding freeze and the likelihood that it caused injury to Plaintiff's alfalfa crop was limited to a single paragraph:

> First, it was stated with impressive certainty that freeze injury was a likely cause. Based on alfalfa plant physiological responses to cold temperature stress, I believe this is not the cause of the injury. When alfalfa plants near the dormancy period of the yearly growth cycle, they translocate energy to the crown (enlarged portion of the plant near the soil surface) in the form of carbohydrates. These carbohydrates are the energy reserve that allow for rapid

---

[4](...continued)
the deadline for the original expert report.

[5] Furthermore, it should have been apparent to Plaintiff before July 1, 2014, that the Martin report could not be completed because of the delay in receipt of the BASF documents, and Plaintiff could have sought an extension of the expert disclosure deadline, which would have removed Plaintiff from his current predicament.

[6] The supplement was provided on August 11, 2014, with Dr. Martin's deposition scheduled for August 15, 2014. According to Defendant, when Plaintiff provided the supplement, he did not provide all of the documents upon which Dr. Martin relied.

4

> regrowth when temperatures warm again. After the alfalfa plants breach dormancy (begin to grown when temperatures increase), they utilize the stored carbohydrates, however, if another period of cold temperature occurs, the plant still begins the regrowth cycle. It simply takes a longer period of time to regrow as the energy source is not as robust. Typically, nitrogen fertilizer application during this period will increase plant growth. After reviewing the soil nutrient reports, it is clear there is an abundance of nitrogen in these soils.

Doc. 45-1, p. 1. In contrast, the discussion of the freeze in the supplement includes Mesonet data and the discussion of the actual temperatures during March and April 2013, and Dr. Martin's opinion with regard to the impact thereof is more than twice as long as his original opinion. The Court finds that the "supplement" is more a wholesale supplanting of the original report, apparently because Plaintiff has only recently obtained the information that was necessary to support Dr. Martin's opinions. As such, the Court finds that the supplemental report as it relates to the potential for freeze to have caused the alfalfa loss was not truly a supplement, and therefore, the Court concludes Dr. Martin shall not be permitted to offer testimony beyond the opinion offered in his initial report.

With regard to his contention that salt injury was not the cause of the loss of the crop, in the supplement Dr. Martin cites to literature in support his prior opinion that alfalfa is sodium tolerant and includes the data for the exchangeable sodium percentage for Plaintiff's land, as recorded in November 2012. Again, nothing in this opinion is truly new information that was not available to Plaintiff at the time he requested that Dr. Martin draft his original expert report.

The obvious purpose of Dr. Martin's original report was to address his theory that herbicide application caused the death of Plaintiff's alfalfa, which he succinctly opines in two

5

paragraphs. He states his believes that application of Raptor, with an active ingredient of imazamox, was the cause, and that it was applied in contravention of a warning listed on its label. Plaintiff contends Raptor was improperly combined with a second pesticide, which indicated sequential application of Pursuit followed by Raptor, or vice versa, should not be done within a sixty-day period.[7] He opined this "likely means that the application of both herbicides will damage the alfalfa." Doc. No. 45-1, p. 2. In his supplemental report, Dr. Martin significantly expands on his opinion by citing to literature from the manufacturer, BASF, but now opines that "[w]ithout asking the person who wrote the label, one may not be certain why the language is as stated above relative to sequential application of both Raptor and Pursuit. However data that shows increased injury from the combination of both products may be the basis behind the statement." Doc. No. 67-9, p. 1.

The Court finds those opinions expressed at page 1 of the supplemental report are not appropriate, as again, they are based on materials that were available at the time of the filing of the original report, had counsel requested them from BASF sooner. Accordingly, Dr. Martin's expanded opinion regarding the combination of pesticides is not permitted.

Finally, at page 2 of the supplemental report Dr. Martin renders an opinion that is not expressed in his original report, but appears to the Court to be properly characterized as rebuttal to the opinion of Defendant's expert, Dr. Boyd, that the presence of Raptor in the alfalfa cells could be explained as residual from the documented application thereof in 2012.

---

[7] Sequential application carries an increased risk of potential alfalfa crop response.

The Court finds, therefore, that the portion of the supplemental report on page 2 addressing this issue is admissible and is properly characterized as a supplement.

Having concluded that certain portions of the supplemental report are not appropriately denoted as "supplemental opinions," the Court must consider whether those opinions are nevertheless admissible. Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

The Court finds that none of the inappropriate attempts at supplementation are substantially justified, for the reasons set forth above. Additionally, given the late date of the supplementation, the impending trial, the need to complete discovery, the fact that any pending *Daubert* motion would likely require substantial amending, combined with Plaintiff's stated intention to maintain this case on the October 2014 trial docket, the Court cannot conclude that permitting Dr. Martin to testify regarding the supplement, other than with regard to the opinions expressed in paragraph 1 of page 2 of the supplement would be harmless. Accordingly, Plaintiff's Motion for Leave to Allow Kent Martin, Ph.D. to Submit Supplemental Expert Report is granted in part and denied in part as set forth above.

**Defendant's Motion to Extend Discovery Deadline for Expert Depositions**

In light of the above, and the fact that expert depositions could not reasonably be conducted when the admissibility of Dr. Martin's supplemental report was at issue, the Court hereby grants an extension of the discovery deadline, solely for the purpose of conducting expert depositions, until Monday September 8, 2014. The parties are to endeavor to work together without additional court intervention on the issue of scheduling these depositions. Defendant's motion for extension (Doc. No. 72) is GRANTED.

**Defendant's Motion to Quash Subpoenas**

Defendant requests that the Court quash subpoenas issued by Plaintiff to its expert witnesses setting deposition on August 28 and 29, 2014. Defendant requests that the Court order that their depositions not be taken until the Court has ruled on Plaintiff's pending motion to supplement, which it has done, and until Defendant has taken the deposition of Plaintiff's expert witnesses. The Court has granted in part and denied in part the request by Plaintiff's counsel to supplement Dr. Martin's expert report. The Court's findings in this regard make it clear which supplemental opinions might be admissible at trial.[8] The Court concurs with Defendant that it is logical to schedule the deposition of Plaintiff's expert witnesses prior to the deposition of Defendant's experts, as Plaintiff bears the burden of proof and Defendant's expert cannot be expected to rebut opinions that have thus far only been expressed in the report and the permissible portion of the supplement. As such, the motion

---

[8] The Court makes no findings regarding the admissibility of expert opinions pursuant to *Daubert* at this time.

8

to quash (Doc. No. 76) is GRANTED.

## **Motion for Protective Order**

Defendant's Motion for Protective Order (Doc. No. 77) is hereby GRANTED IN PART. Defendant's experts shall not be deposed until such time as Plaintiff's experts have been subject to deposition by Defendant. In all other respects, it is DENIED AS MOOT.

For the reasons set forth herein, Plaintiff's motion (Doc. No. 67) is GRANTED IN PART AND DENIED IN PART; Defendant's Motions (Doc. Nos. 72, 76, 77, 88 and 89) are GRANTED. Defendant's Motion to Strike (Doc. No. 85) is DENIED AS MOOT.

IT IS SO ORDERED this 25th day of August, 2014.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE